**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 31 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SARAH J. THREET,

         Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

         Defendant-Appellee.

No. 03-7015

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 01-CV-620-S)**

Submitted on the briefs:

Catherine Zilahy of Perrine, McGivern, Redemann, Reid, Berry & Taylor,
P.L.L.C., Tulsa, Oklahoma, for Plaintiff-Appellant.

Shelton J. Sperling, United States Attorney; Tina M. Waddell, Chief Counsel,
Region VI; Michael McGaughran, Deputy Chief Regional Counsel; Linda H.
Green, Assistant Regional Counsel, Office of the General Counsel, United States
Social Security Administration, Dallas, Texas, for Defendant-Appellee.

Before **SEYMOUR** , **BRISCOE** , and **LUCERO** , Circuit Judges.

**SEYMOUR** , Circuit Judge.

Plaintiff appellant Sarah Threet is a disability claimant who filed an application for benefits in February 1999 alleging disability since November 15, 1995, due to left shoulder and neck limitations and related pain. [1] Ms. Threet's claim was initially denied, but an Administrative Law Judge (ALJ) approved Ms. Threet for a closed period of disability spanning from March 11, 1997 through September 16, 1998. Ms. Threet applied for review by the Appeals Council and, in conjunction therewith, submitted additional evidence of disability which had not been available at the time of the hearing before the ALJ. The Appeals Council denied the request for review, making the decision of the ALJ the final decision of the Commissioner for purposes of this appeal. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). Ms. Threet appeals and, for the reasons stated below, we reverse and remand for further proceedings.

# I

On November 15, 1995, Ms. Threet fell into a hole while working for a plumbing contractor, injuring her left shoulder and neck. An x-ray taken the day

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

of the accident showed Ms. Threet's left shoulder to be normal. Aplt. App. at 83. The doctor who examined Ms. Threet two days later diagnosed tendinitis. *Id.* at 175. Approximately two weeks after the accident, an arthrogram showed no evidence of a rotator cuff tear. *Id.* at 89. Ms. Threet embarked on a course of physical therapy and was given trigger point injections which helped somewhat to ease her pain and further her recovery. During the early months of 1996, Ms. Threet's shoulder was improving but she was still diagnosed with severe muscle spasms of the trapezius and paraspinal cervical muscles (her neck). *Id.* at 158. In August of 1996, Ms. Threet was still complaining of pain in her neck and shoulder, *id.* 157, and by the end of that year she had been diagnosed by her doctor as having a sprain of the cervical spine and was referred to an orthopedic specialist, *id.* at 249. On December 19, 1996, Ms. Threet was admitted to the emergency room at the McQuistion Regional Medical Center where an x-ray revealed moderately advanced degeneration of the disc spaces between the C5 and C6 neck vertebrae (spondylosis at C5-C6), bony outgrowths as a result of her inflamed tendons (posterior spurring) and muscle spasm, with the ontoid and cervical spine otherwise normal. *Id.* at 244-45.

After an MRI on March 11, 1997, Ms. Threet's orthopedic surgeon recommended a cervical fusion to address the neck pain and an evaluation of her shoulder, which showed "rotator cuff tendinopathy with tendinitis and a down

sloping acromion process." [2] *Id.* at 265. On June 26, 1997, Ms. Threet had a discectomy [3] and fusion at C5-C6.

Throughout the balance of 1997, Ms. Threet's neck pain lessened, but she continued to complain of shoulder pain. On December 8, 1997, Ms. Threet had a local anesthetic injected into her left shoulder. Because this injection provided relief for only five to six hours, Ms. Threet underwent arthroscopy with debridement of partial undersurface rotator cuff tear and open anterior/inferior capsular shift procedure. [4] *Id.* at 122, 303. After another course of physical therapy, the shoulder surgeon, Dr. Jimmy Conway, noted that Ms. Threet was "not having any significant change in her symptoms." *Id.* at 202. He felt she had reached maximum medical benefit and that she should be permanently restricted from lifting more than twenty pounds or performing work functions which required her to raise her hands above her head. *Id.* Ms. Threet's last visit with a treating physician prior to her disability hearing before the ALJ occurred on September 16, 1998.

---

[2] Tendinopathy is a condition in which the tendons begin to degenerate. The acromion process is commonly known as the outer edge of the shoulder.

[3] A discectomy is a surgical process in which degenerative disc and shoulder material is removed from the body, and replaced with a bone graft.

[4] During an arthroscopy procedure, the internal structure of a joint is examined through a scope inserted into the body. In a debridement procedure, degenerative material is removed from the joint. A capsular shift procedure seeks to tighten the sack around the shoulder joint in order to keep the joint in place.

On March 23, 2000, the day before the ALJ issued his decision, Ms. Threet underwent another MRI of her left shoulder. That test revealed a partial rotator cuff tear with AC joint arthrosis. Dr. Conway stated that "in light of her continued symptoms, which are increasing, [Ms. Threet] should again undergo arthroscopy of her shoulder with debridement of the partial rotator cuff tear, possible repair and probable subacromial decompression, distal clavical excision." [5] *Id.* at 303. Dr. Conway believed that, following surgery, Ms. Threet would reach maximum medical improvement in three months. *Id.* Ms. Threet presented this evidence to the Appeals Council.

Relying on the date of Ms. Threet's first MRI for a start date and the date of her last appointment with a treating physician as an end date, the ALJ awarded Ms. Threet a closed period of disability from March 11, 1997 through September 16, 1998. [6] Outside that period, the ALJ found Ms. Threet could not do her past relevant work but had the residual functional capacity for sedentary work. Relying on testimony from a vocational expert, the ALJ concluded that because there were other jobs in significant numbers in the national economy that

---

[5] The subacromial decompression procedure seeks to provide more room in an individual's shoulder for the rotator cuff tendons to move. A part of the underportion of the shoulder bone is removed to create more space for the tendons. Likewise, a distal clavical excision procedure removes a small amount of bone from what is commonly called the collar bone.

[6] Ms. Threet was insured for disability through March 31, 1997.

a person with Ms. Threet's characteristics could perform, she was not disabled before March 11, 1997, or after September 16, 1998.

In reaching his conclusion, the ALJ disregarded the opinion of Dr. John Ellis, a state agency medical consultant who examined Ms. Threet and her medical file for the purposes of her workers' compensation claim, but did not treat Ms. Threet in any way. The ALJ found Dr. Ellis's restrictive residual functional capacity assessment (RFC) to be "inconsistent with [Ms. Threet's] record of having received no medical care/treatment for her injury since September 16, 1998." *Id.* at 353-54. The ALJ also refused to fully credit Ms. Threet's testimony about limits to her daily activities as a result of her injury, thereby concluding Ms. Threet's medical condition had improved and that, after September 16, 1998, she was no longer disabled. *Id.* at 356. In response to Ms. Threet's testimony that she did not get medical treatment after September 16, 1998, because the most she could afford was over-the-counter Tylenol, the ALJ concluded such evidence suggested "that her pain has been relatively amenable to control." *Id.* at 354.

As mentioned above, Ms. Threet presented evidence of her March 23, 2000 MRI and her surgeon's medical opinion to the Appeals Council as she was allowed to do pursuant to 20 C.F.R. 404.970(b). The Council acknowledged that "where new and material evidence is submitted with the request for review, the

entire record will be evaluated and review will be granted where the Appeals Council finds that the Administrative Law Judge's actions, findings, or conclusion is [sic] contrary to the weight of the evidence currently of record." *Id.* at 11 (citing 20 C.F.R. 404.970). Without analysis, the Council concluded there was "no basis under the above regulations for granting your request for review." *Id.* The Council further noted that it had "considered the applicable statutes, regulations, and rulings in effect as of the date of this action." *Id.*

The district court affirmed the decision of the ALJ to award a closed period of disability, finding it supported by substantial evidence. *Id.* at 378. The court did not cite or discuss 20 C.F.R. 404.970(b).

## II

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in light of the entire record, and to determine whether the correct legal standards were applied. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell*, 44 F.3d at 858 (citation omitted). Finally, in the course of our review, we may "neither reweigh the evidence nor

substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

Ms. Threet argues that she has been disabled since November 15, 1995, the date of her accident, and continues to be disabled at present. She thus contends the ALJ's decision to award only a closed period of disability is not supported by substantial evidence. As part of this argument, Ms. Threet asserts the ALJ committed reversible error by failing to articulate reasons for disregarding the opinions of her treating physicians. She further asserts the ALJ erroneously found that objective medical evidence established there had been improvement in her medical condition since September 16, 1998.

Finally, she contends "[t]he Administrative Law Judge erred in finding that Threet required 'no further treatment' when the substantial medical evidence mandates further surgery." Aplt. Br. at 16. As developed in her brief, this argument is essentially a challenge to the decision of the Appeals Council to deny review of the ALJ's decision and a challenge to the conclusion of the district court that *Walton,* 535 U.S. 212, mandates a finding of no disability.

We are unable to address Ms. Threet's first contention that the ALJ erred in failing to articulate reasons for disregarding the opinions of her treating physicians, because that argument is insufficiently developed in Ms. Threet's brief. Ms. Threet does not identify which treating physician she feels was ignored,

and we will not speculate on her behalf. The only medical opinions explicitly rejected were those of Dr. John Ellis, a nontreating physician. The ALJ properly articulated reasons for rejecting Dr. Ellis's conclusions.

Turning to Ms. Threet's general challenge to the closed period of disability, we agree the ALJ overlooked uncontroverted evidence that may indicate disability before March 11, 1997. As discussed above, the ALJ selected March 11, 1997, as the start date for the period of disability because that was the date on which Ms. Threet had her first MRI indicating she was a candidate for a discectomy and fusion. The ALJ stated that "[s]tudies prior to March 1997, failed to show evidence of left shoulder injury of a surgical nature." Aplt. App. at 354. This reasoning suffers from two problems. First, we have never held that evidence of disability is limited to instances where surgery is required. Second, while the ALJ is correct that no medical studies showed the need for shoulder surgery prior to March 1997, there is evidence that on November 29, 1995, Ms. Threet was diagnosed with a severe sprain of the rotator cuff, *id.* at 170, and on January 11, 1996, with a severe spasm of the trapezius and paraspinal cervical muscles, *id.* at 158. With respect to her neck, there is evidence that on December 19, 1996, Ms. Threet was admitted to the emergency room at McQuistion Regional Medical Center complaining of neck and shoulder pain. An x-ray taken that day revealed "moderately advanced spondylosis at C5-6 narrowing the interspace, creating

-9-

posterior spurring, and creating moderate spurring into the foramen on the left at 5-6." *Id.* at 245. Moreover, Ms. Threet sought medical care at least twenty-eight times (including physical therapy sessions) between the occurrence of her injury and her first MRI in March 1997. The ALJ did not refer to this evidence, and while he is not required to discuss every piece of evidence in the record, he "must discuss the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion that Ms. Threet's disability began on March 11, 1997, is itself supported by substantial evidence. We therefore remand for the ALJ to articulate specific findings and his reasons for ignoring this evidence. [7]

---

[7] If the ALJ holds to his original conclusion on remand, he will need to address problems with his analysis of how the medical improvement standards apply to Ms. Threet. *See Shepherd v. Apfel*, 184 F.3d 1196, 1200-01 (10th Cir. 1999).

As part of the medical improvement standards analysis, the ALJ concluded Ms. Threet regained a residual functional capacity for sedentary work by the end of the disability period. In reaching this conclusion, however, the ALJ did not rely on any objective medical evidence. Rather, he relied on the fact that he did not believe Ms. Threet's testimony regarding limitations on her daily activities and the fact that she had not received any medical attention since September 16, 1998. As a cautionary note, we find this reasoning dubious.

First, the lack of evidence of medical treatment does not constitute objective medical evidence of improvement. A decrease in the medical severity of an impairment sufficient to constitute medical improvement must be

(continued...)

We turn now to Ms. Threet's challenge to the Appeals Council's denial of review. As discussed above, Ms. Threet had a second MRI on March 23, 2000, the day before the ALJ released his decision. According to Ms. Threet's orthopedic surgeon, that test revealed the need for further surgery. This evidence was presented to the Appeals Council.

We have joined the majority of circuits in holding, pursuant to 20 C.F.R. 404.970(b), that "new evidence [submitted to the Appeals Council] becomes a part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence." *O'Dell*, 44 F.3d at 859. The cited regulation specifically requires the Appeals Council to consider evidence submitted with a request for review "if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision." *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (internal quote omitted); *see also O'Dell*, 44 F.3d at 858. If the Appeals Council fails to consider qualifying new

---

[7](...continued)
substantiated by changes in signs, symptoms, or laboratory findings. *Id*. at 1201-02. Second, Ms. Threet testified that all she could afford was over-the-counter Tylenol. Aplt. App. at 335. Instead of acknowledging that inability to pay may provide a justification for a claimant's failure to seek treatment, *see Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993), the ALJ concluded this evidence meant that Ms. Threet's pain was amenable to control. The record appears to indicate otherwise. During the early stages of Ms. Threet's treatment, one of her physicians refused to continue treating her because she had no money and no proof of insurance. Aplt. App. at 149. She was also unable to get an MRI in September 1996 because she could not afford one. *Id.* at 151.

evidence, the case should be remanded for further proceedings. *Box*, 52 F.3d at 171.

Whether the March 2000 MRI and the accompanying medical opinions qualify as new, material, and chronologically pertinent is a question of law subject to our *de novo* review. *Id.* "Evidence is new within the meaning of [404.970(b)] if it is not duplicative or cumulative." *Wilkins v. Sec'y, Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991). Ms. Threet's evidence of further deterioration of her shoulder is new and objectively verifiable medical evidence of her alleged disabling condition. This evidence was not available to the ALJ at the time he made his decision, and is thus neither duplicative nor cumulative.

Evidence is material to the determination of disability "if there is a reasonable possibility that [it] would have changed the outcome." *Id.* at 96. Ms. Threet's new evidence meets this standard by reasonably calling into question the disposition of the case in light of the ALJ's determination that her disability had ended as of September 16, 1998, based on his conclusion that she had no further medical treatment and the medical evidence showed her condition had improved. Finally, timeliness is no problem here because the evidence relates to the period before the ALJ's decision.

In its letter denying review, the Appeals Council gave no indication that it followed 20 C.F.R. 404.970(b). Although it cited the regulation, the Council

simply stated, without any reference to the newly submitted materials, that "there is no basis under the above regulations for granting your request for review." Aplt. App. at 11. If this means that the Appeals Council did not evaluate the entire record including the new evidence, that failure constitutes substantial legal error necessitating a remand for further proceedings consistent with the principles discussed herein.

The judgment of the district court is **REVERSED**, and the case is **REMANDED** to the district court with directions to remand, in turn, to the Commissioner.