**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 24 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

PRESTON BOLTON,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 04-5014
(D.C. No. 02-CV-941-EA)
(N.D. Okla.)

---

ORDER AND JUDGMENT   *

---

Before **SEYMOUR** , **KELLY** , and **McCONNELL** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Preston Bolton appeals from an order of the district court affirming the Social Security Commissioner's decision denying his applications for disability insurance benefits and supplemental security income benefits under the Social Security Act. We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We affirm.[1]

## I.

Plaintiff claims that he has been unable to work since December 31, 1994 due to lower back pain, hepatitis C, hearing loss, an adjustment disorder with depressed mood, and an anti-social personality disorder.[2] With respect to the latter mental impairments, plaintiff claims that he suffers from severe depression and paranoia; that he lives a reclusive lifestyle and shuns contact with other people; and that he hears voices and suffers from occasional hallucinations.

---

[1] The administrative record is contained in Volumes I and II of plaintiff's Appendix, and the pages of the record are numbered 5-364. Plaintiff has also included a number of pleadings and other court documents in Volume I of his Appendix, and the pages containing the pleadings and other documents are numbered P1-P72. As a result, unless a citation herein to a page in Volume I of plaintiff's Appendix is proceeded by a "P," the citation is to a page in the administrative record.

[2] Although plaintiff also claimed that he suffers from headaches, the ALJ found that, "since there has not been a medical determination of signs and findings identifying a related impairment, his headaches are not a severe impairment." Aplt. App., Vol. I at 18. Plaintiff is not challenging the ALJ's finding regarding his headaches.

Plaintiff's applications for benefits were denied initially and on reconsideration, and a de novo hearing was held in October 1999 before an administrative law judge (ALJ). Subsequently, in a decision dated May 25, 2000, the ALJ denied plaintiff's applications for benefits, concluding that plaintiff was not disabled because: (1) although plaintiff's claimed impairments are severe impairments which prevented him from performing his past relevant work, he retained the residual functional capacity (RFC) to perform light and sedentary work, subject to the limitations that: (a) he is unable to climb ropes, ladders, and scaffolds; (b) he is unable to work in environments of unprotected heights or dangerous moving machinery parts; and (c) he can understand, remember, and carry out only simple to moderately detailed instructions; and (2) based on the testimony of the vocational expert, plaintiff was capable of performing other jobs that existed in significant numbers in the national economy.

In October 2002, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Plaintiff then filed a complaint in the district court. After the parties consented to having a magistrate judge decide the case, a magistrate judge entered an order affirming the ALJ's decision denying benefits.

## II.

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v.*

*Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, we "neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only to determine whether the correct legal standards were applied and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Doyal*, 331 F.3d at 760.

In this appeal, plaintiff claims that the ALJ committed reversible error by: (1) failing to properly address his mental impairments and the credibility of his subjective complaints regarding his functional limitations; and (2) failing to accurately assess the combined effect of his physical and mental impairments. We disagree with plaintiff on both points, and we therefore affirm the ALJ's decision denying plaintiff's applications for benefits.[3]

### A. New Evidence.

Plaintiff submitted new medical evidence to the Appeals Council that was not available at the time of the ALJ's decision. The evidence consisted of:

---

[3] In his opening brief, plaintiff also asserts that the ALJ erred by failing to give appropriate weight to the opinions of his treating physicians. *See* Aplt. Opening Br. at 2, 14-15, 20-21. Plaintiff failed to present this argument to the district court, however. *See* Aplt. App., Vol. I at P27-P36, P11-P14. "Absent compelling reasons, we do not consider arguments that were not presented to the district court." *Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994). Because plaintiff has made no attempt to explain why he did not present his treating physician argument to the district court, we see no reason to deviate from the general waiver rule.

(1) medical records from Wagoner Community Hospital relating to treatment that plaintiff received in June and July 2000 from his treating psychiatrist, Dr. Sangal, *see* Aplt. App., Vol. II at 342-64; and (2) an undated handwritten note stating that "[a]t the present time [plaintiff] is under treatment at Bill Willis Mental Health Center [and] is unable to work," *id.* at 340. The handwritten note was signed by a woman named Amber Mizell, and plaintiff claims that Ms. Mizell was one of his treating therapists.[4] *See* Aplt. Opening Br. at 20-21. While both parties have referred in their appellate briefs to this new evidence, neither plaintiff nor the Commissioner have addressed the issue of how this court is to treat the new evidence for purposes of this appeal. As a result, we must address the status of the new evidence before we examine the specific issues raised by plaintiff.

According to 20 C.F.R. § 404.970(b):[5]

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record

---

[4] The administrative record does not contain any treatment notes or other records that were prepared by Ms. Mizell. As a result, we have been unable to confirm whether she was in fact one of plaintiff's treating therapists. We will assume for purposes of this appeal, however, that Ms. Mizell was one of plaintiff's therapists.

[5] Although 20 C.F.R. § 404.970(b) applies only to claims for disability insurance benefits, 20 C.F.R. § 416.1470(b) sets forth an identical regulation for purposes of claims for supplemental security income benefits. All citations herein to the Code of Federal Regulations are to the regulations that were in effect at the time of the ALJ's decision in May 2000.

including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

We recently addressed § 404.970(b) in *Threet v. Barnhart*, 353 F.3d 1185 (10th Cir. 2003) where we held as follows:

> We have joined the majority of circuits in holding, pursuant to 20 C.F.R. 404.970(b), that new evidence submitted to the Appeals Council becomes a part of the administrative record to be considered when evaluating the [ALJ's] decision for substantial evidence. The cited regulation specifically requires the Appeals Council to consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision. If the Appeals Council fails to consider qualifying new evidence, the case should be remanded for further proceedings.

*Id.* at 1191 (quotations, citations, and original brackets omitted).

In its decision denying plaintiff's request for review, the Appeals Council stated that "it considered the additional evidence identified [by plaintiff]." Aplt. App., Vol. I at 5. However, the Appeals Council "concluded that this evidence does not provide a basis for changing the [ALJ's] decision," *id.*, and the Council denied plaintiff's request for review, *id.*

As we understand the Appeals Council's decision, the Council determined, as a threshold matter, that the additional medical evidence submitted by plaintiff was new, material, and chronologically related. As a result, the Council then "considered" the evidence, *id.*, meaning that it "evaluate[d] the entire record

-6-

including the new and material evidence." 20 C.F.R. § 404.970(b). Because the Appeals Council "considered" the new evidence submitted by plaintiff, "the new evidence [is] part of the administrative record to be considered [by this court] when evaluating the [ALJ's] decision for substantial evidence." *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994); *accord Threet*, 353 F.3d at 1191. As set forth below, having reviewed the new medical evidence and the administrative record as a whole, we agree with the Appeals Council that the new evidence does not require a change in the outcome of this case, as the ALJ's decision remains supported by substantial evidence.

**B. Mental Impairment Analysis.**

In accordance with 20 C.F.R. §§ 404.1520a(d) and 416.920a(d), the ALJ completed a Psychiatric Review Technique form (PRT) in which he evaluated the functional limitations caused by plaintiff's mental impairments. As summarized by the ALJ in his decision, in the PRT, the ALJ concluded that: (1) "[t]he degree of limitation with respect to [plaintiff's] activities of daily living are found to be 'slight'"; (2) "[plaintiff's] difficulties in maintaining social functioning are found to be 'moderate'"; (3) "[plaintiff's] deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner . . . are found to be 'seldom'"; and (4) "there is no evidence of any episodes of deterioration or decompensation in work or work-like settings." Aplt. App., Vol. I at 19.

According to §§ 404.1520a(c)(4) and 416.920a(c)(4), the ALJ was required to discuss in his decision "the significant history, including examination, laboratory findings, and functional limitations that [were] considered in reaching [the] conclusions [in the PRT]." In his decision, the ALJ complied with this requirement, as the ALJ's decision contains a detailed discussion of the pertinent medical and other evidence in the administrative record that supports his decision that plaintiff is not disabled as a result of his mental impairments. *See* Aplt. App., Vol. I at 19-21. In particular, the ALJ discussed the medical records and/or reports of Dr. Cordy (a treating psychiatrist), Dr. Sangal (a treating psychiatrist), Dr. Koduri (a consultative examining psychiatrist retained by the Commissioner), and Dr. Varghess and Dr. Pearce (non-examining consultative physicians retained by the Commissioner). *Id.* We see no error in the ALJ's mental impairment analysis, and we conclude that the analysis is supported by substantial evidence in the record.

### C. Credibility Analysis.

In his decision, the ALJ concluded that plaintiff's "accounts of his [mental] impairments . . . lack[ed] credibility." *Id.* at 22. First, the ALJ noted that "[a]lthough [plaintiff] was offered hospitalization on more than one occasion, he did not accept such treatment." *Id.* Second, the ALJ noted that Dr. Sangal had reported that plaintiff "was 'non-compliant' with his medication and also missed

several appointments." *Id.* Third, plaintiff was in prison from September 1995 through September 1998 on several felony charges relating to writing fraudulent checks. *Id.* at 50-53. The ALJ therefore found that "[t]he fact that [plaintiff] is a convicted felon tends to lessen his credibility, particularly since his crimes demonstrate an ability to perpetrate deceit and dishonesty over an extended period of time." *Id.* at 22. Fourth, the ALJ found that "upon review of the entire record and [plaintiff's] testimony, [plaintiff] has not been completely candid with regard to prior drug use." *Id.* Lastly, the ALJ found that plaintiff had "also been inconsistent with his accounts of whether or not he is suicidal." *Id.*

In his opening brief, plaintiff claims that the ALJ erred in finding that his allegations regarding the functional limitations caused by his mental impairments were not credible. Specifically, plaintiff argues that the ALJ's credibility analysis is flawed because: (1) plaintiff's allegations regarding his functional limitations are supported by the low Global Assessment of Functioning (GAF) scores that he received from Dr. Sangal in 1999 and 2000; (2) the ALJ misunderstood the nature of plaintiff's mental impairment(s); and (3) the ALJ failed to take into account the opinions of plaintiff's treating therapists, Kathy Gamblin and Amber Mizell, both of whom signed documents stating that he is unable to work.

Having reviewed the entire record, and in particular the new medical evidence from Dr. Sangal that was submitted to the Appeals Council, we conclude

-9-

that the ALJ's credibility analysis is legally sound and supported by substantial evidence in the record. To begin with, Dr. Sangal's medical records from June and July 2000 call into question the veracity of each and every statement that plaintiff has made in this case, either to the treating physicians, the retained physicians, or the ALJ, regarding his drug use and his mental impairments. The records show that plaintiff was hospitalized from June 8 to June 13, 2000, and Dr. Sangal's discharge summary reported the following:

> [The patient] was hospitalized . . . with a long history of polysubstance abuse who for the past two years has been using Morphine, including [intravenous] Morphine, as much as 180mg a day. The patient has followed up, very non-compliant with his outpatient follow up through Bill Willis Community Mental Health Center with the history that he had been abusing opioids. The patient came in feeling suicidal.

*Id.*, Vol. II at 345.

Similarly, in the psychiatric evaluation that Dr. Sangal prepared in June 2000 in connection with plaintiff's hospitalization, he reported the following:

> The patient has followed up very inconsistently at Bill Willis Community Mental Health Center and at the clinic. He never gave any history that he was using [intravenous] Morphine.
>
> . . . The patient reports that he has been using as much as 180mg of Morphine on a daily basis over the past two years including [intravenous] use. In the past, he has a history of using everything. He has used cannabis, amphetamines and alcohol. His current drug of choice is Morphine.

*Id.* at 348. Subsequently, plaintiff was also hospitalized from July 8 to July 10, 2000, and it was again reported by Dr. Sangal that plaintiff had "a long history of severe opioid dependence." *Id.* at 357. As a result, Dr. Sangal recommended that plaintiff "be placed in . . . inpatient rehabilitation." *Id.* at 358.

As stated in Dr. Sangal's records, although Dr. Sangal had been treating plaintiff since December of 1998, *id.* at 307, plaintiff had not previously disclosed to Dr. Sangal that he had been using morphine on a daily basis. Likewise, while the ALJ specifically questioned plaintiff about his drug use at the hearing in October 1999, plaintiff made no mention of his then-existing morphine addiction. *Id.*, Vol. I at 50-51, 59. Consequently, the new evidence submitted from Dr. Sangal bolsters the ALJ's determination that plaintiff's allegations regarding his mental impairments lacked credibility because he had "not been completely candid with regard to prior drug use." *Id.* at 22.

The new evidence submitted from Dr. Sangal showing daily morphine use also raises serious questions regarding the validity of the low GAF scores that plaintiff received from Dr. Sangal in 1999 and 2000. *See* Aplt. Opening Br. at 12 (summarizing the GAF scores that plaintiff received from Dr. Sangal between 1999 and 2000). This is true both with respect to plaintiff's behavior during the time period that each particular GAF score was assessed and with respect to the credibility of the information that plaintiff conveyed to Dr. Sangal regarding the

functional limitations caused by his mental impairments. Thus, we conclude that the low GAF scores that plaintiff received from Dr. Sangal do not provide a basis for reversing the ALJ's credibility determination. [6]

We also reject plaintiff's claim that the ALJ erred because he misunderstood the nature of plaintiff's mental impairments and/or failed to take into account the opinions of plaintiff's treating therapists, Kathy Gamblin and Amber Mizell. Regardless of whether the ALJ failed to understand the precise nature of plaintiff's mental impairments, his finding that plaintiff's allegations regarding his mental impairments are not credible is supported by substantial evidence in the record. In addition, the therapists' conclusory statements to the effect that plaintiff was "unable to work," Aplt. App., Vol. II at 311, 340, do not provide a basis for reversing the ALJ's decision in this case, as there is no indication in the record that Ms. Gamblin or Ms. Mizell are "acceptable medical

---

[6]    We note that the record also contains three additional GAF scores from plaintiff's treating physicians, and the scores were in the record that was before the ALJ, although the ALJ did not address them in his decision. The failure of the ALJ to address the additional GAF scores does not provide a basis for reversing the ALJ's credibility determination. Two of the scores (the scores of Dr. Stewart and Dr. Hoogewind), were assessed in 1990 and 1991, respectively, and are thus far removed in time from plaintiff's alleged onset date of December 31, 1994.    See Aplt. App., Vol. II at 299, 300. The remaining score (the score of Dr. Cordy) was assessed in 1996 during the time that plaintiff was in prison and living in a high-stress environment.    Id. at 253. The GAF scores from 1990, 1991, and 1996 are thus of limited relevance, and we therefore conclude that the ALJ did not err in failing to examine them as part of his credibility analysis.

sources" under the governing regulations. *See* 20 C.F.R. §§ 404.1513(a) and 416.913(a). Moreover, even if they are acceptable medical sources, they failed to provide any supporting information or documentation.

Finally, we note that the new evidence from Dr. Sangal bolsters the ALJ's finding that plaintiff failed to comply with the treatment recommendations that he had previously received from the medical personnel at Bill Willis Community Mental Health Center. It also supports the ALJ's finding that plaintiff had been inconsistent with his accounts of whether or not he was suicidal, as Dr. Sangal's records indicate that plaintiff initially reported being suicidal upon his admission into the hospital on June 8, 2000, but that he subsequently denied being suicidal and requested his immediate discharge. *See* Aplt. App., Vol. II at 345. This same pattern of behavior was repeated when plaintiff was again hospitalized in July 2000. *Id.* at 357.

**D. Combination of Impairments.**

Plaintiff claims that the ALJ erred by failing to properly evaluate his mental impairments in combination with the physical impairments caused by his lower back pain, his hepatitis C, and his diminished ability to hear. We disagree.

With respect to plaintiff's back impairment, the ALJ specifically noted in his decision that plaintiff had been examined by a consultative internist retained by the Commissioner. *Id.*, Vol. I at 20. As further noted by the ALJ, however,

-13-

the internist reported that, while plaintiff had previously "had back surgery," he was not being "treated for back pain by his doctor, nor [was] he taking any medication for the pain." *Id.*, Vol. II at 278. The ALJ also found that "the record does not show that [plaintiff] sought treatment [for his lower back pain] since he was injured in 1993." *Id.*, Vol. I at 22. The ALJ further noted that "[o]n a disability report dated October 19, 1998, [plaintiff did] not list back pain as a disabling condition." *Id.* (citing Aplt. App., Vol. II at 133).

With respect to plaintiff's hepatitis C, the ALJ specifically noted in his decision that the consultative internist had reported that: (1) plaintiff's liver function was found to be normal in 1996; and (2) even if plaintiff did have hepatitis C, it was likely asymptomatic. *Id.* at 20 (citing Aplt. App., Vol. II at 278-79). The ALJ further noted that "the record does not show that [plaintiff] ever sought treatment for his hepatitis C." *Id.* at 22. The lack of medical evidence concerning plaintiff's hepatitis C was also confirmed by the consultative internist, as he reported that "[t]he available medical records did not mention Hepatitis C." *Id.*, Vol. II at 278.

With respect to plaintiff's hearing loss, the ALJ noted that the record shows only that plaintiff has been diagnosed as suffering from a mild hearing loss. *Id.*, Vol. I at 20 (citing Aplt. App., Vol. II at 261). We note that the same doctor who

-14-

diagnosed the mild hearing loss also determined that plaintiff did not need hearing aids.  *Id.*, Vol. II at 261.

Given the ALJ's careful consideration of the medical evidence related to each of plaintiff's impairments, both mental and physical, plaintiff's claim that the ALJ erred by failing to consider the combined effect of his impairments is without merit.  To the contrary, as noted by the district court, "the record does not support Plaintiff's contention that the ALJ failed to consider his impairments in combination.  The [ALJ's] RFC [determination] included limitations due to back impairments (light work and no climbing), hearing (restriction from working around moving machinery) and mental (superficial interaction with supervisors and co-workers)."  *Id.*, Vol. I at P10.

The judgment of the district court is AFFIRMED.

Entered for the Court

Michael W. McConnell
Circuit Judge

-15-