**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

PRISCILLA A. WATSON,

  Plaintiff-Appellant,

 v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

  Defendant-Appellee.

No. 06-5023
(D.C. No. 04-CV-740-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

Priscilla Watson appeals the district court's order affirming the

Commissioner's decision to withhold disability benefits. She argues that the ALJ

failed to properly assess (1) whether her medical conditions satisfied a listing;

and (2) her credibility. We affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

## BACKGROUND

At the time of the disability hearing, Watson was fifty-two years old and lived with her daughter. She has been diagnosed with hypertension, osteoarthritis, sciatica, obesity, and tendinitis in her left shoulder. Watson testified that she has lower back pain that radiates down into her legs, she has pain "through [her] neck in to [her] shoulders," Aplt. App., Vol. II, at 342, she has headaches, she has depression, she has pain and swelling in her feet, she has pain and stiffness in her shoulders, her legs "tire real easily," *id.* at 336, and her hands "cramp up," *id.* at 341.

Regarding her limitations, a residual functional capacity (RFC) assessment indicated that Watson could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours, sit for about six hours, and occasionally stoop. Watson, however, testified that she can lift only ten pounds, stand for only fifteen or twenty minutes at a time, and walk no more than the distance of a "short block." *Id.* at 347. Watson also indicated that raising her arms is painful and that she cannot bend, kneel or squat. As for her daily activities, Watson testified that she reads, watches television, and remains in "bed . . . practically all day," *id.* at 351, getting up only to brush her teeth and get a bowl of cereal or a sandwich. Watson also attends church at least once a week and sometimes visits her sister.

A vocational expert (VE) indicated that Watson has worked as a maid, a presser in a dry cleaning business, a janitor, a home health aide, and a fast food worker. *Id.* at 362. In response to the ALJ's hypothetical, which took into account Watson's RFC and included a restriction on arm raising, the VE testified that Watson could return to work as a maid, a presser, or a fast food worker. Finally, the VE testified that if Watson were fully credible regarding her limitations, she would be unable to work.

The ALJ denied benefits at step four of the sequential evaluation process, opining that Watson's "impairments are [not] as severe as she alleges," *id.* at 19, and that she could work as a maid, a presser, or a fast food worker. After the Appeals Council denied review, Swanson filed a complaint for judicial review in federal district court. Unsuccessful, Swanson appealed.

## DISCUSSION

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income [SSI] to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). To determine whether a claimant is disabled under the Act, an ALJ must follow a five-step sequential evaluation process. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

> At step one, the claimant must show that he is not presently engaged in substantial gainful activity; at step two that he has a medically severe impairment or combination of impairments; at step three that the impairment is equivalent to a listed impairment; and, at step four, that the impairment or combination of impairments prevents him

-3-

from performing his past work. If the claimant successfully meets his burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity . . . to perform work in the national economy, given his age, education, and work experience.

*Id.* (citation and quotations omitted).

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). "Substantial evidence is adequate relevant evidence that a reasonable mind might accept to support a conclusion." *Kepler v. Chater*, 68 F.3d 387, 388-89 (10th Cir. 1995).

## I.

Watson argues that the ALJ erred at step three. Specifically, she notes that the ALJ failed to "name a single listed impairment that he considered and found that [she] did not meet or equal." Aplt. Br. at 19. But at the disability hearing, in response to the ALJ's inquiry, Watson's former attorney declared that Watson was not claiming to meet a listing. Aplt. App., Vol. II, at 331. Although it is generally improper for an ALJ to summarily conclude, as he did here, that a claimant's impairments do not meet or equal any listed impairment, *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996), we discern no error where the claimant's counsel unambiguously concedes the step three issue before the ALJ, *see Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (stating that "an

-4-

ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case"). We reject Watson's assertion that accepting her former counsel's step-three concession amounts to some sort of "*post hoc* argument[ ] to salvage the ALJ's decision." Aplt. Br. at 23. There is nothing impermissibly *post hoc* about recognizing that a claimant has invited the deficiency of which she complains. *Cf. Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (stating that *post hoc* attempts to supply possible reasons for an ALJ's decision are improper because they require courts to "overstep [their] institutional role and usurp essential functions committed in the first instance to the administrative process" (quotation omitted)).

## II.

Watson also argues that the ALJ's credibility determination was flawed. While a claimant's credibility is generally an issue reserved to the ALJ, the issue is reviewable to ensure that the underlying factual findings are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quotation omitted).

The ALJ concluded that Watson's impairments were not as severe as alleged because she

> sought little medical care and possesses a weak work record. . . .
> Medical records . . . do not give objective support to her complaints
> of back pain. The consultative examination by Angelo Dalessandro,

> D.O. . . . indicates Ms. Watson had a full range of cervical spine motion. Range of motion of the lumbar spine was only moderately limited and she had normal heel and toe walking. Her dexterity and grip strength were adequate, according to Dr. Dalessandro who offered no lifting/carry restrictions . . . .

Aplt. App., Vol. II, at 19. Watson first claims that the ALJ ignored various parts of the record regarding her shoulder impairment and back pain. An ALJ is not, however, required to discuss every piece of evidence in the record. *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003). Rather, an ALJ must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely upon, and any significantly probative evidence he rejects. *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004). Here, the ALJ met that standard by summarizing Watson's treatment records and correctly noting that she was given "several forms of conservative care for her back pain." Aplt. App., Vol. II, at 18. And while conservative care does not necessarily foreclose a finding of disability, *see Threet*, 353 F.3d at 1190, it is a relevant consideration, *see Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

Watson summarily claims that the ALJ failed to fully develop the administrative record by obtaining "evidence of treatment by a chiropractor, a free clinic and at a Neighbor for Neighbor clinic." Aplt. Br. at 27. Ordinarily, the ALJ "has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). But Watson neither

-6-

(1) suggests what the omitted treatment evidence might reveal; nor (2) identifies anything in the record that would have reasonably notified the ALJ that such evidence existed. Indeed, regarding our second observation, Watson's former attorney notified the ALJ during the hearing, when the ALJ asked whether the record was complete, that there were recent emergency room visits not reflected in the record. Aplt. App., Vol. II, at 330. But Watson's former attorney mentioned nothing about the evidence that Watson now complains was missing. We reject Watson's argument.

Watson also claims that the ALJ misconstrued Dr. Dalessandro's findings. Specifically, Watson cites a medical journal article which she reads as refuting the ALJ's finding of adequate grip strength. But a claimant's interpretation of such an article is not recognized as impairment evidence. *See* 20 C.F.R. § 404.1513 (disability insurance regulation designating acceptable medical sources that can provide evidence of an impairment); *id.* § 416.913 (comparable SSI regulation); SSR 96-5p, 1996 WL 374183, at *4 (requiring that opinions about an individual's capabilities be based on medical records and examinations). Moreover, the ALJ's description of Watson's grip strength as adequate corresponds with Dr. Dalessandro's opinion that Watson can "effectively grasp tools." Aplt. App., Vol. II, at 124.

Watson next attacks the ALJ's credibility determination on the basis that he "paid lip service to [her] medications," Aplt. Br. at 30, and "did not do justice to

. . . their side effects," *id.* at 31.  The ALJ correctly observed, however, that Watson took "muscle relaxants . . . and narcotic pain medication," Aplt. App., Vol. II, at 18.  And Watson identifies only one reference in the entire medical record to a medication's side effect:  Motrin "making [her] stomach hurt," *id.* at 158.  Without any evidence suggesting that this side effect had any bearing on her limitations, the ALJ had no duty to discuss it.  *See Hamlin*, 365 F.3d at 1217 (stating that an ALJ must discuss significantly probative evidence he rejects).

Watson next challenges the ALJ's finding that her work record is weak. We may not reweigh the evidence that lead the ALJ to this finding.  *See Hackett*, 395 F.3d at 1173.  We conclude only that (1) Watson's lack of employment for a large portion of the last fifteen years constitutes substantial evidence for the ALJ to characterize her work record as weak; and (2) a lack of work history is one of many factors that an ALJ may consider in assessing credibility, *see* SSR 96-7p, 1996 WL 374186, at *5; *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998).

After examining the record as a whole, we are persuaded that the ALJ's credibility findings are closely and affirmatively linked to substantial evidence.

The judgment of the district court is AFFIRMED.

Entered for the Court


John C. Porfilio
Circuit Judge

-8-