**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 12, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JERRY L. HARROLD,

          Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

          Defendant-Appellee.

No. 07-5179
(D.C. No. 4:06-CV-00589-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **PORFILIO**, and **ANDERSON**, Circuit Judges.


Jerry L. Harrold appeals from an order entered by the district court

affirming the Social Security Commissioner's denial of his application for

disability insurance benefits under Title II of the Social Security Act. Exercising

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we reverse and remand for further proceedings.

## I. Background.

Mr. Harrold was born on March 2, 1970. He graduated from high school attending special education classes, and he was apparently diagnosed as being mentally handicapped at all levels of his childhood education. Mr. Harrold has extensive prior work experience as a maintenance supervisor and maintenance technician. *See* Aplt. App., Vol. II at 54-76. He claims that he has been unable to work since July 10, 2003, due to "[l]earning problems, back injury and surgery, high blood pressure, high pulse rate, sinus and allergy problems." *Id.* at 74-75.

After Mr. Harrold's application for disability benefits was denied initially and on reconsideration, a de novo hearing was held before an Administrative Law Judge (ALJ) on February 8, 2006. Subsequently, on April 11, 2006, the ALJ issued a written decision denying Mr. Harrold's application for benefits. In his decision, the ALJ went through the five-step sequential evaluation process for determining disability[1] and found: (1) that Mr. Harrold had not engaged in substantial gainful activity since July 10, 2003; (2) that Mr. Harrold suffered from severe medical impairments consisting of "status post back fusion and depression,"

---

[1]     The five-step sequential evaluation process is set forth in 20 C.F.R. § 404.1520(a)(4). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five-steps).

-2-

*id.* at 17; (3) that Mr. Harrold did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (specifically, the ALJ considered Listing 1.04 (Disorders of the Spine) and Listing 12.04 (Affective Disorders)); (4) that Mr. Harrold did not retain the residual functional capacity to perform his past relevant work; but (5) that Mr. Harrold retained the residual functional capacity to perform other work that exists in significant numbers in the national economy (specifically, based on the testimony of a vocational expert at the hearing, the ALJ identified the jobs of laundry sorter, mailroom clerk, labeler, and bench assembler). Accordingly, the ALJ concluded that Mr. Harrold had "not been under a 'disability,' as defined in the Social Security Act, from July 10, 2003 through [April 11, 2006]." Aplt. App., Vol. II at 21.

Mr. Harrold subsequently filed a request for review of the ALJ's decision with the Social Security Appeals Council. In support of his request for review, Mr. Harrold submitted: (1) a letter from his counsel dated June 15, 2006, containing factual and legal arguments; and (2) a report from William T. Bryant, Ph.D., dated March 8, 2006.[2] *Id.* at 10, 381-88. Dr. Bryant is a clinical

---

[2]     Dr. Bryant's report was prepared after the hearing before the ALJ but before the ALJ issued his written decision. Although Mr. Harrold claims that he submitted Dr. Bryant's report to the ALJ before the ALJ issued his written decision, the ALJ did not refer to the report in his decision. Mr. Harrold does not claim, however, that the ALJ erred by failing to consider Dr. Bryant's report.

(continued...)

psychologist, and he evaluated Mr. Harrold on February 20 and March 3, 2006.

*Id.* at 384. As part of his evaluation, Dr. Bryant conducted a formal mental status

exam and administered an IQ test (The Wechsler Adult Intelligence Scale - Third

Edition). *Id.* at 386-87. Dr. Bryant's report states that Mr. Harrold has a Verbal

IQ of 66; a Performance IQ of 60; and a Full Scale IQ of 61. *Id.* at 386. Based on

the IQ scores and the mental status exam, Dr. Bryant concluded that Mr. Harrold

"has Mild Mental Retardation." *Id.* at 388. Dr. Bryant also reported that

"Mr. Harrold's reading level is so low that he essentially cannot read."[3] *Id.* at 387.

In the letter that Mr. Harrold's counsel submitted to the Appeals Council,

his counsel relied on Dr. Bryant's report to support the following arguments:

> At step three of the sequential evaluation, the ALJ was required
> to determine whether the claimant's impairments "meet, medically
> equal, or functionally equal in severity a listed impairment." 20
> C.F.R. § 416.924(d) (2000). Of particular significance to this case is
> listing [12.05C]. *Id.* at Part 404, Subpart P, Appendix 1 § 12.05C.
> That section of the listings is met with the following criteria:

---

[2](...continued)

Instead, relying on our decision in *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th
Cir. 2003), he is treating Dr. Bryant's evaluation as "new and material evidence"
that was properly submitted to the Appeals Council in accordance with the
provisions of 20 C.F.R. § 404.970(b), *see* Aplt. Opening Br. at 24-26, and we will
do the same.

[3]      In his report, Dr. Bryant also noted that "Mr. Harrold said that he was in
Educable Mentally Handicapped (EMH) classes all during school." Aplt. App.,
Vol. II at 384. According to Dr. Bryant, "[t]hese classes were for children who
had been identified as mentally retarded. The criterion at the time was an IQ of
75 or below." *Id.*

> A valid verbal, performance, or full scale IQ of 60
> through 70 and a physical or other mental impairment
> imposing [an] additional and significant [work-related]
> limitation of function.

*Id.* The Tenth Circuit has held that the "significant [work-related] limitation" in this context is met if the additional impairment meets the severity of the step two standard. *Hinkel v. Apfel*, 132 F.3d 1349, 1352-53 (10th Cir. 1997). Since the ALJ decision in this case, the Commissioner revised the regulations to include a definition of the severity of this additional impairment that is consistent with *Hinkle*. 20 C.F.R. Part 404, Subpart P, Appendix 1 [§ 12.00(A)].

Here, the ALJ's decision, on its face, shows the claimant meets the second part of this listing, since the ALJ included several severe impairments at step two. In addition, the first prong of the listing is clearly met by the attached testing that Dr. Bryant performed. Because the listing is so clearly met, we request that the Appeals Council grant the payment of benefits instead of remanding this case for another hearing.

Aplt. App., Vol. II at 382.

In August 2006, the Appeals Council denied Mr. Harrold's request for review of the ALJ's decision. In the "Notice of Appeals Council Action," the Appeals Council stated that it "considered the reasons [Mr. Harrold] disagree[s] with the [ALJ's] decision in the material listed on the enclosed Order of Appeals Council," and the referenced "material" included the letter from Mr. Harrold's counsel and Dr. Bryant's report. *Id.* at 6, 10. Without specifically referring to either the letter or the report, the Appeals Council then stated the following:

> However, the Appeals Council finds that this information does not
> provide a basis for changing the Administrative Law Judge's decision.
> The [doctor who performed the consultative physical examination]
> noted that you reported a learning disability and is silent for any

reports of mental retardation.  [Exhibit 12F]  None of your treatment sources noted observations consistent with a diagnosis of mental retardation.  Your work history is inconsistent with developmental deficiencies.  Your report to Dr. Bryant that implied that your past work was of a routine nature learned in a supportive environment is not consistent with your description of your past work in the documentary record.  You reported using power and hand tools, repairing a variety of appliances including heaters, air conditioners, stoves etc., and doing remodeling including dry wall work (Exhibit 1E).

*Id.* at 7.

Mr. Harrold next filed a complaint in the district court, arguing that the ALJ "failed to develop the record in that he did not order a consultative mental examination, and the step three determination is contrary to Plaintiff's full scale IQ of 61."  *Id.*, Vol. I at 11.  In October 2007, the district court entered an order in which it rejected both of Mr. Harrold's arguments and affirmed the Commissioner's denial of Mr. Harrold's application for disability benefits.

Because it is germane to our analysis below regarding the step-three listing issue, we note the district court concluded that "[t]he Appeals Council . . . rejected . . . Dr. Bryant's report as inconsistent with the rest of the record."  *Id.* at 14.  The court then proceeded to address two issues:  "(1) whether . . . the Appeals Council provided sufficient rationale to justify rejection of Dr. Bryant's report; and (2) whether that rationale has support in the record."  *Id.*  The court answered both questions in the affirmative, reasoning as follows:

The Appeals Council pointed to a significant body of specific information in the record that was contrary to Dr. Bryant's report.

-6-

The undersigned finds therefore that the Appeals Council provided sufficient rationale to reject Dr. Bryant's report. Further, the Court finds that the reasons the Appeals Council provided for rejecting Dr. Bryant's report are supported by substantial evidence in the record.

Since the Appeals Council properly rejected Dr. Bryant's report as being inconsistent with the other evidence of record, the Court finds that it was not error to fail to consider Dr. Bryant's report in the context of the Listing of Impairments.

*Id.* at 15.

## II. Analysis.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied." *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). We may "neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

Agreeing with the analytical framework used by the district court, Mr. Harrold argues in this appeal that the Appeals Council "implicitly rejected the report by Dr. Bryant as invalid." Aplt. Opening Br. at 28. He claims, however, that "the Appeals Council's rejection of [Dr. Bryant's] report is not supported by the evidence." *Id.* We agree that, while the Appeals Council did not explicitly

-7-

refer to Dr. Bryant's report, *see* Aplt. App., Vol. II at 6-7, its decision must be read as implicitly rejecting Dr. Bryant's report as being inconsistent with the record as a whole. In addition, having conducted the required substantial evidence review of this factual question, we agree with Mr. Harrold that the Appeals Council's rejection of Dr. Bryant's report is not supported by substantial evidence in the record.

As set forth above, the Appeals Council first noted that Mr. Harrold did not tell the doctor who conducted the consultative physical examination that he was mentally retarded, but instead reported only that he had a "learning disability." *Id.* at 7; *see also id.* at 211-15 (report of Dr. First). We agree with Mr. Harrold that this is an insufficient reason for rejecting either Dr. Bryant's opinion that Mr. Harrold is mildly mentally retarded or the IQ scores that support his opinion. First, it has absolutely nothing to do with the validity of the IQ scores. Second, the purpose of the consultative physical examination was to examine Mr. Harrold's physical impairments, not his mental impairments, and it thus seems particularly inappropriate for the Appeals Council to draw a negative inference from the contents of the examiner's report. Lastly, regardless of the context, we agree with Mr. Harrold that "[t]he fact that a mentally retarded claimant described his mental capacity as a 'learning disability' seems irrelevant, and it is certainly no reason to reject the report by Dr. Bryant." Aplt. Opening Br. at 28.

The Appeals Council also relied on the fact that none of Mr. Harrold's treating physicians noted observations consistent with a diagnosis of mental retardation. *See* Aplt. App., Vol. II at 7. We conclude that this is also an insufficient reason for rejecting Dr. Bryant's opinion or the IQ scores. Most importantly, none of Mr. Harrold's doctors were treating him for any problems directly related to his cognitive abilities. Further, while Mr. Harrold was noted to have an "above average" intellect in a "Psycho-Social Evaluation" that was prepared in 2005 in connection with treatment he received for his depression, the hand-written "circle all that apply" evaluation form does not provide any information regarding the basis of this assessment and it appears to be only an "initial observable condition." *Id.* at 378 (original in upper case letters). Without more, the "above average" intellect opinion cannot be relied on to reject Dr. Bryant's mild-retardation opinion or the IQ scores.

Finally, the Appeals Council concluded that Mr. Harrold's "work history is inconsistent with developmental deficiencies," *id.* at 7, and, as noted above, Mr. Harrold has an extensive prior work history as a maintenance supervisor and maintenance technician, *id.* at 54-76. We agree with the Appeals Council that Mr. Harrold's prior work history is highly probative of his cognitive abilities. We also note that this court has expressly held that it is proper for an ALJ to consider other evidence in the record when determining whether IQ scores are valid for purposes of Listing 12.05. *See Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir.

2007).  In fact, in *Lax*, we concluded that the record in that case contained substantial evidence to support a finding that the claimant's IQ scores were not an accurate reflection of his intellectual abilities, *id.*, and much of the evidence that we relied on to make that determination is similar to the evidence that the Appeals Council relied on here, *id.* at 1087-89.

Nonetheless, we conclude that *Lax* is distinguishable from the situation in this case because, in *Lax*, the doctor who administered the claimant's first IQ test "explicitly questioned the validity of [the claimant's] IQ scores" and the doctor who administered a second IQ test "commented upon disparities between [the claimant's] observed intellectual functioning and his test scores."  *Id.* at 1087. Moreover, despite the claimant's low IQ scores, the latter doctor questioned whether the claimant was in fact mentally retarded.  *Id.* at 1087-88.  In this case, by contrast, Dr. Bryant reported that "Mr. Harrold was interested in the testing and performed with good motivation" and "[h]e did not malinger."  Aplt. App., Vol. II at 386, 388.  Further, Dr. Bryant gave an express opinion to the effect that Mr. Harrold's prior work history, while extensive, was not inconsistent with a diagnosis of mild mental retardation.  *Id.* at 385, 388 (noting that Mr. Harrold's work history shows that "[h]e has had no trouble getting jobs, but he just cannot keep them," and that his "work history . . . reflects the difference between his appearance and his [actual] ability.  He was able to get jobs based on brief interviews, but his performance was so far below his presentation that it became

-10-

obvious very quickly."). Given these significant differences between the situation

in *Lax* and the situation in this case, we hold that the Appeals Council erred in

relying on Mr. Harrold's prior work history as a basis for rejecting Dr. Bryant's

mild-retardation opinion and the IQ scores.

In sum, we conclude that it is necessary to remand this case to the

Commissioner for a step-three determination of whether Dr. Bryant's

mild-retardation opinion, the supporting IQ scores, and Mr. Harrold's additional

severe impairments at step two satisfy the capsule definition and the severity

prong of Listing 12.05C.[4]  *See Lax*, 489 F.3d at 1085 (discussing what is

commonly referred to as the "capsule definition" for Listing 12.05 and the four

"severity prongs" of the listing).  In light of our disposition of the substantial

evidence issue as it pertains to Dr. Bryant's opinion and the IQ scores, we do not

need to reach Mr. Harrold's separate argument that the ALJ erred in failing to

obtain a consultative mental examination.  However, on remand, the Commissioner

may consider whether to order such an examination at the government's expense

pursuant to the controlling regulations, *see* 20 C.F.R. §§ 404.1519 and

404.1519a-1519f, and our case law decisions, *see, e.g., Hawkins v. Chater*, 113

F.3d 1162, 1166-68 (10th Cir. 1997).  Indeed, we note that Mr. Harrold has

---

[4]      In this appeal, Mr. Harrold has not challenged any of the ALJ's findings at
steps four and five of the sequential evaluation process, and he has therefore
waived any challenges to those findings.  As a result, for purposes of our remand
to the Commissioner for further proceedings, only step three will be at issue.

specifically requested that this court "remand the case for further development." Aplt. Opening Br. at 31; *see also* Aplt. Reply Br. at 10.

The judgment of the district court is REVERSED and this case is REMANDED to the district court with instructions to REMAND the case to the Commissioner for further proceedings consistent with this order and judgment. Mr. Harrold's motion for leave to proceed on appeal in forma pauperis is GRANTED.

Entered for the Court

Stephen H. Anderson
Circuit Judge