[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10075
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-00218-MHH


YVONNE B. PHILLIPS,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 3, 2020)

Before JORDAN, NEWSOM, and LAGOA, Circuit Judges.

PER CURIAM:

Yvonne Phillips appeals the district court's order affirming the administrative

law judge's ("ALJ") denial of her application for Disability Insurance Benefits

("DIB"), pursuant to 42 U.S.C. § 405(g), and the order denying her motion to alter or amend that judgment filed pursuant to Federal Rule of Civil Procedure 59(e) motion.  For the reasons stated below, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In January 2013, Phillips applied for DIB, alleging that she was unable to work due to a disabling condition beginning on December 20, 2012.  In her disability report, Phillips, who was fifty-three years old on her alleged onset date, claimed that the following conditions caused her pain and prevented her from working: (1) chronic bronchitis; (2) degenerative disk disease; (3) screws in her neck; (4) fibromyalgia; (5) diverticulosis; (6) depression; (7) arthritis in her knees; (8) asthma; (9) reflux; and (10) diabetes.  She stated that she took several different medications to manage those conditions.  Phillips submitted two function reports from herself and her husband, Ray Phillips ("Ray"), explaining that Phillips's conditions limited her ability to lift more than five to ten pounds, squat, bend, stand, reach, sit, kneel, climb stairs, walk, complete tasks without getting tired, and pay attention.  Phillips further claimed that she had trouble seeing, remembering things, and using her hands.  Phillips also completed a work history report, stating that she most recently worked as a "911 Operator/Dispatcher" and listing her other previous jobs.  Phillips also completed a pain questionnaire, stating that: (1) she had back pain beginning in the mid-1990s and fibromyalgia pain for most of her adult life; (2) the pain was

2

located in her back, muscles, and right knee; (3) the pain had become "more intense and more often," with the muscle pain being "almost constant" and the back pain being "daily"; (4) standing or sitting too long, strenuous activity, housework, and driving all brought upon the pain, which would last for hours; (5) she took several kinds of medicine to manage the pain, which caused drowsiness; (6) she used a back brace to help alleviate the pain; and (7) her daily activities were limited to walking mostly inside, some household chores, "not much driving," and socializing only when she was able to go to church.

On March 22, 2013, the Commissioner of the Social Security Administration (the "Commissioner") denied Phillips's application for DIB.  Phillips subsequently requested a hearing before an ALJ.  Prior to the ALJ hearing, Phillips submitted numerous medical reports—predating the alleged disability onset date of December 20, 2012—as evidence of the conditions she suffered and the examinations and procedures she underwent to treat those conditions.  In April 2008, Phillips visited Dr. Cornelis B. Thomas complaining of "[p]ain all over" that had worsened over the last year.  Dr. Thomas assessed that Phillips suffered from fibromyalgia, diabetes, hypothyroidism, hypertension, asthma, and reflux disease.  Phillips also received a cervical interlaminar epidural for neck pain and degenerative disk disease in April 2008.  In June 2009, Phillips visited Dr. Dallas Russell, who diagnosed Phillips with

3

fibromyalgia and prescribed her medication, which he changed twice after she reported side effects at follow-up visits.

In November 2009, Phillips visited Dr. Perry Savage for neck pain. Following an examination and an MRI, Dr. Savage concluded that Phillips had cervical disc degeneration, a herniated disk at C5-C6, cervicalgia, and cervical radiculopathy and recommended surgery to Phillips. That same month, Phillips underwent an anterior cervical discectomy, anterior cervical decompression at C5-C6, with anterior cervical fusion at C5-C6 using segmental fixation with a plate, four screws, and autogenous bone from the right iliac crest. In December 2009, Phillips followed up with Dr. Savage, reporting that her neck had improved but that she still felt lower back and leg pain. After conducting an examination and reviewing x-rays of Phillips's lower back, Dr. Savage diagnosed her with lumbago and lumbar disc degeneration and recommended a low back epidural and exercises. Phillips subsequently received an epidural and "facet block translaminar block at L4-5 and a facet block at 5-1 bilaterally."

In January 2010, Phillips saw Dr. C. Douglas Bell to whom Phillips complained of being "sore all over, hurting with light touch, flu-like symptoms, febrile sensation, and fatigue." Dr. Bell assessed that Phillips was overweight and suffered from diabetes, hypothyroidism, and fibromyalgia. Dr. Bell discussed with Phillips an exercise program, the importance of proper sleep, and ways to manage

stress.  In October 2010, Phillips revisited Dr. Savage complaining of neck and lower back pain.  Dr. Savage assessed Phillips as suffering from lumbago, cervical disc degeneration, lumbar disc degeneration, and cervicalgia.  He did not recommend surgery but prescribed Phillips pain medication and recommended that she avoid prolonged overhead arm position and reduce her weight.  In November 2010, Phillips received a lumbar epidural block with fluoroscopy.  In February 2011, Phillips had a follow-up visit with Dr. Savage for her lower back and neck pain.  Dr. Savage noted that Phillips's condition had improved but she complained of new pain in her right knee that had gradually onset for several months and increased while walking, standing in a certain way, and climbing stairs.  Dr. Savage assessed Phillips as suffering from knee joint pain and localized primary osteoarthritis of the knee and recommended strengthening exercises as well as cortisone injections if the pain persisted, but not surgery.

In March 2011, Phillips received a lumbar epidural block with fluoroscopy from Dr. Savage, and in June 2011, she visited Dr. Savage complaining of knee pain. Dr. Savage assessed that Phillips had a torn meniscus and recommended surgery. Dr. Savage performed arthroscopic surgery on Phillips's right knee, during which he discovered that there were no torn menisci but, rather, severe chondromalacia in "all three compartments."  Then, in January 2012, Phillips visited Dr. Savage with complaints of left-hand pain and right-knee pain.  Dr. Savage ordered x-rays and,

5

following review of those x-rays, diagnosed osteoarthritis on the medial side of Phillips's right knee and a "trigger finger" on her left hand. Dr. Savage injected her right knee with 2 ccs of Betamethasone and recommended her treatment remain conservative. In February 2012, Phillips visited Dr. Gene Watterson, who assessed Phillips as having "diffuse musculoskeletal pain, polyarthralgia/polyarthritis" and recommended further tests and psychiatry for clinical depression to improve her restorative sleep. In April 2012, Phillips returned to Dr. Savage with complaints of left foot pain and pain on her right side. Dr. Savage diagnosed plantar fasciitis and provided Phillips with a pain injection.

Then, in July 2012, Phillips visited Dr. James White III for a second opinion regarding her back pain. After Phillips informed Dr. White of her symptoms and the fact that the injections for her pain were no longer working, Dr. White ordered x-rays and an MRI of her lower back. The same month, Phillips visited Dr. Monica Cardenas, who assessed her with uncontrolled Type II diabetes and increased her insulin medication. In August 2012, Phillips returned to Dr. White, who diagnosed Phillips with a severely degenerative L5 disc with discal herniation and recommended that she undergo a "one level interbody infusion" and wear a brace. Phillips underwent a "[t]otal laminectomy and bilateral facetectomy, lumbar 5, with bilateral lateral mass fusion at lumbar 5-S1[,] transforaminal lumbar interbody fusion at lumbar 5 from the left with bilateral flare screw[,] and pedicle screw

6

instrumentation at lumbar 5 S1 with NIMS neuromuscular monitoring." Following surgery, Phillips returned to Dr. White and informed him that she was doing well but had some drainage in her back, for which he ordered a culture of the drainage and prescribed an antibiotic. Phillips visited Dr. White twice in September 2012 and reported no changes. In October 2012, Phillips again returned to Dr. White, informing him she had returned to work and was unable to do physical therapy. At this visit, Dr. White noted that x-rays taken of Phillips's back "look[ed] good" and that Phillips was stable following the lumbar fusion. In December 2012, Phillips went to the emergency room at Gadsden Regional Medical Center with complaints of upper back pain, shortness of breath, a fever, and chills.

For medical evidence detailing her conditions after the alleged onset date of December 20, 2012, Phillips submitted records which showed the following. On January 30, 2013, Phillips visited Dr. Brooke Gorham for an annual diabetic foot evaluation. Phillips complained of left heel pain, which Dr. Gorham diagnosed as plantar fasciitis. In February 2013, Phillips returned to Dr. White, who reported that Phillips was hospitalized several times with asthmatic bronchitis and had quit her job since her last visit. Dr. White explained that Phillips complained of "occasional back pain and muscle spasms" but that the pain was "not nearly as bad as it was preoperatively and . . . not constant." Phillips declined an MRI, and Dr. White

7

prescribed her pain medication and muscle relaxers and instructed her to follow up with him in a couple weeks.

On March 15, 2013, Dr. Sathyan Iyer ("Dr. Iyer") examined Phillips at the request of the Disability Determination Service. Dr. Iyer stated that Phillips reported having lower back pain for many years, which did not result from a specific injury and had worsened over the previous two years. Phillips also reported that "[s]itting, standing, bending, lifting, climbing, and squatting ma[de] the pain worse with radiation to the right leg." She further reported: (1) right knee pain for the previous five to six years, for which she had surgery in 2011 and currently received cortisone shots; (2) occasional neck pain, for which she had surgery in October 2010; (3) numbness of her fingers and prior carpal tunnel release surgery on her right side; and (4) plantar fasciitis affecting her left foot. Dr. Iyer noted that Phillips was "somewhat obese and in no acute distress," that she could stand up without assistance, that her gait was normal, that she could walk on her heels and tiptoes and squat partially, that she could get off and on the examination table without difficulty, and that she used no assistive device. Turning to Phillips's joints and musculoskeletal system, Dr. Iyer noted that: Phillips's neck had full anterior flexion, lateral flexion, and rotation motion; Phillips had full range of motion her shoulders, elbows, and wrists; her left hand had decreased touch sensation over the index finger compared to her little finger; her grip strength and opposition functions were normal;

8

her lumbar spine was tender over her suprascapular and interscapular muscles; and she had full range of motion in her hips, knees, and ankles.  Dr. Iyer's impressions were that Phillips had lower back pain with restricted range of motion secondary to underlying degenerative joint and disc disease of the lumbar spine, history of bilateral carpal tunnel syndrome with carpal tunnel release on the right, history of degenerative disc disease of the cervical spine, and was obese.  He explained that in Phillips's current condition, "she could have impairment of functions involving bending, lifting, squatting, climbing, pushing, pulling, handling and overhead activities" but had no "limitation of functions involving sitting, standing, walking, hearing, or speaking."

On March 22, 2013, Dr. Robert Estock reviewed Phillips's application and determined that she was not disabled.  Reviewing the submitted medical evidence, Dr. Estock concluded that Phillips suffered from "Disorders of Back-Discogenic and Degenerative," which he rated as severe, and "Affective Disorders," which he rated as non-severe.  Dr. Estock gave Dr. Iyer's medical opinion "significant weight as it [was] mostly consistent with the rest of the objective medical evidence in the file."

In April 2013, Phillips returned to Dr. White after having an MRI and x-rays of her lumbar back.  While the x-rays showed a normal postoperative lumbar spine, Dr. White reported that the MRI showed Phillips had posterior bulging of her L4 disc and of her previous L5 fusion.  Phillips elected to try an epidural for

9

symptomatic relief.  Phillips also visited Dr. Cherie Miner in April 2013, reporting that she had pain on the anterior and lateral aspects of her right knee and had noticed popping under her kneecap.  Dr. Miner noted that Phillips exhibited decreased patella mobility and that an x-ray of Phillips's right knee revealed lateral patellar tilt with mild to moderate patellofemoral degenerative changes.  Dr. Miner assessed that Phillips suffered from right knee osteoarthritis and recommended that Phillips avoid aggravating activities, ice her knee, and receive Synvisc-One injections.

In May 2013, Phillips returned to Dr. White and requested a refill of her pain medication.  In September 2013, Phillips visited Dr. Vishala Chindalore  and reported back pain that "[did] not limit activities."  A physical examination showed that Phillips had swollen hands and a normal gait.  Dr. Chindalore ordered several tests and x-rays of Phillips's hands, knees, and pelvis.  The x-rays of Phillips's hands revealed mild carpometacarpal joint narrowing and arthritis bilaterally as well as "PIP and DIP narrowing to some extent but no significant erosions, cystic changes or chondrocalcinosis," and the x-rays of her knees showed "mild medical joint space narrowing but no other significant abnormalities, except lateral views had some small osteochondromas."

On April 7, 2014, the ALJ hearing occurred.  At the hearing, Phillips testified that she drove "very little" due to the constant pain in her back and that she had stopped working because she "couldn't stand the pain in [her] back and in [her]

10

neck." After discussing her work history, Phillips explained that the "constant pain" in her neck and back and from her fibromyalgia prevented her from working. She reported that she took pain medications, which did not cause her any side effects, and that she had recently received a cortisone shot in her left knee because she could barely walk. Phillips also testified that her daily activities depended on the intensity of her pain from fibromyalgia, which was often "excruciating," and that she did not "do a lot in the house" other than some household chores with her husband's aid. She also testified she avoided using the computer frequently because of her carpal tunnel and arthritis in her hands.

Additionally, Phillips explained that she returned to work after back surgery and that, while she wore a back brace, the constant sitting during the twelve-hour shifts was "just too much." Phillips missed "a lot of days" of work due to the pain from her neck, back, and fibromyalgia. She testified that she believed her back pain had worsened since having surgeries on her neck and back. She explained that sitting for more than thirty to forty minutes and standing for more than ten minutes hurt her back, that she constantly felt fatigued, and that she could not walk for long periods. She also testified that she suffered from diabetes, hypertension, and diverticulitis and that she recently developed irritable bowel syndrome and constipation. She rated her pain as either a "6" or "7" on an average day and an "8.5" on bad days. Finally,

Phillips stated that she tried to return to her job as a 911 dispatcher but that she "just couldn't do it."

The ALJ also heard from a vocational expert who listened to Phillips's testimony and examined her work history. The ALJ asked the expert whether a hypothetical individual with Phillips's age and education who was "limited to a light exertional level," who could frequently use and handle hand controls, and who was unable to work at unprotected heights, in extreme temperatures, or around respiratory irritants, could perform any of Phillips's past jobs. The expert responded that the hypothetical person could do so. In response to questioning from Phillips's attorney, the expert explained that a hypothetical person experiencing pain as described by Phillips "would render the person unable to maintain full-time competitive employment."

On May 30, 2014, the ALJ denied Phillips's claim for DIB, finding that she was not disabled within the meaning of the Social Security Act from December 20, 2012, through the date of the decision. The ALJ determined that Phillips met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since the alleged onset date. The ALJ found that Phillips had "the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine, degenerative joint disease of the right knee, bilateral carpal tunnel syndrome, status post right release, and asthma." The ALJ noted that the

evidence indicated "complaints of and/or treatment for obesity, fibromyalgia, plantar fasciitis and metatarsalgia, diabetes mellitus, controlled, hypertension, controlled, hyperlipidemia, seborrheic keratosis with inflammation of the forehead, and depression," but that those impairments did not "more than minimally affect [Phillips's] ability to perform work related activities" and were thus "non-severe." Additionally, the ALJ determined that Phillips's "severe" impairments did not meet the severity of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ found that the evidence did not support a finding that Phillips was "unable to ambulate effectively" under "Listing 1.02 *Major Dysfunction of a Joint*" and that Phillips's back pain did not meet "Listing 1.04," as her MRI examinations failed to reveal any significant herniations, stenosis, or nerve root impairment. The ALJ also found that Phillips had "the residual capacity to perform light work as defined in 20 CFR [§] 401.1567(h)," except that she was precluded "from overhead work activity and from climbing ramps, stairs, ladders, and scaffolds, . . . working at unprotected heights or around hazardous moving mechanical parts[,] . . . [and] working in exposure to extreme temperatures, respiratory irritants, fumes, and gases."

Then, the ALJ summarized the medical evidence and determined that while Phillips had "some limitations resulting from her impairments, it [did] not support a finding of disability." Specifically, the ALJ noted Phillips reported that, in December 2012, she was able to perform daily living activities without assistance

13

and that, in September 2013, her back pain did not limit her activities. The ALJ stated that there was no evidence of recent ongoing treatment for fibromyalgia or of her allegation of debilitating fatigue. The ALJ also stated that there was no opinion evidence indicating Phillips was disabled or unable to work and gave "great weight" to Dr. Iyer's opinion that Phillips "does not have limitations of functions involving sitting, standing, walking, hearing, or speaking," noting his opinion was consistent with the medical evidence of record. The ALJ gave some weight to statements made by Phillips's husband that demonstrated Phillips had "a relatively full range of activities of daily living. The ALJ noted that while Phillips's attorney provided a summary of her work absences, a majority of the payroll timesheets were not certified to be correct because they were not signed by Phillips or her supervisor and did not indicate Phillips's absences were because of her impairments. And the ALJ noted that no treating physician had opined Phillips would be absent more than several days per month due to her impairments. Finally, the ALJ concluded that Phillips was "capable of performing past relevant work as a dispatcher, real estate agent, receptionist, cashier, and general office clerk," finding the vocational expert's testimony that Phillips had the residual functional capacity ("RFC") to perform those jobs to be credible and consistent with the evidence.

On June 26, 2014, Phillips requested review of the ALJ's decision by the Appeals Council, contending that the decision to deny benefits was not supported by

substantial evidence and that the ALJ failed to apply the appropriate legal standards. Phillips also submitted additional medical evidence consisting of the following. In July 2003, Phillips visited Dr. William Haller with complaints of back pain that ran down her leg to her knee, and Dr. Haller diagnosed Phillips with degenerative disc and prescribed her an epidural steroid injection. In August 2007, Phillips visited Dr. Carter E. Slappey with complaints of right knee pain. Dr. Slappey conducted a physical examination and an x-ray, determined that Phillips had "some patellofemoral crepiture and tenderness" and "some mild to moderate patellofemoral joint change with some lateral patellar subluxation," and recommended a knee brace, physical therapy, an exercise program, and medication. In November 2013, Phillips visited Dr. White to request a lumbar epidural, who agreed to give her an epidural injection the following week. In January 2014, Phillips visited Northeast Orthopedic Clinic with complaints of left knee pain, and the doctor's impression was that Phillips had osteoarthritis in her left knee, particularly in the lateral component, and possible degenerative meniscal tear. This doctor prescribed her medication, injected her knee with Marcaine and Aristopan, and instructed her to return in three weeks. In February 2014, Phillips again returned to Dr. White, informing him she was "much improved with the lumbar epidural steroid injection." Phillips also returned to Dr. Chindalore that month with complaints of back pain and osteoarthritis, and Dr. Chindalore prescribed Phillips medication.

15

Then, in June 2014, Phillips again visited Dr. White, complaining of "more pain in her back and not her legs" and "some neck pain." Dr. White recommended cervical and lumbar MRIs and x-rays and prescribed Phillips pain medication. Dr. White examined the cervical and lumbar x-rays and the cervical MRI and found that they were "essentially normal postoperative." As to the lumbar MRI, Dr. White's impression was that there was a "posterior bulge at L4," which he believed was not "surgical," and an otherwise normal postoperative lumbar spine. On June 30, 2014, Phillips visited Dr. Daniel Ryan with complaints of sharp and aching pain, swelling, and instability in her left knee, all of which were exacerbated by weight bearing and relieved with rest. Dr. Ryan reviewed new x-rays, which showed "mild arthritic changes, becking of the intracondylar eminences, [and] some narrowing of the lateral joint space" that was minimal. Dr. Ryan observed that Phillips had "some osteophyte formation in all three compartments" that was "minor" and that her symptoms had "worsened dramatically," suggesting a lateral meniscal tear, and ordered an MRI to evaluate a lateral meniscal tear to see if she would be a candidate for arthroscopy. On July 10, 2014, Dr. Ryan reviewed the MRI and assessed that Phillips had: (1) a small radial tear in the body of the lateral meniscus; (2) "[p]eripheral tear of the junctional zone of the medical meniscus"; (3) moderate effusion; (4) "[g]rade 3 chondromalacia of the patellar facet cartilage on the medial eminence and lateral patellar facet"; and (5) "[f]ocal chondromalacia, degeneration

16

of the medial and lateral femoral condylar cartilages best demonstrated on the coronal fast spin echo sequences." At a follow-up July 15, 2014, visit, Dr. Ryan noted that Phillips's "knee pain if anything is worsening" and recommended arthroscopic surgery, to which Phillips agreed. Phillips also submitted progress notes from Dr. Huma Khusro dated August 12, 2014, in which Phillips reported experiencing depression and anxiety, being unable to perform her work physically or emotionally, and detailing childhood trauma and other traumatic life experiences.

On January 9, 2015, the Appeals Council denied Phillips's request for review. Reviewing the entire record and the ALJ's decision, the Appeals Council found that the ALJ did not abuse his discretion in denying Phillips's claim. The Appeals Council noted that the submitted evidence dated after the ALJ's May 30, 2014, decision was "new information . . . about a later time" and, therefore, did not affect the decision of whether Phillips was disabled beginning on or before May 30, 2014.

On February 5, 2015, Phillips sought judicial review of the denial of her application for DIB. Phillips argued that the Appeals Council failed to determine whether her new submissions were chronologically relevant and that, because the Appeals Council did not do so, remand was required. Additionally, Phillips argued that the ALJ's finding that she could perform past work was not supported by substantial evidence and that the ALJ did not apply the proper legal standards in making his finding. Phillips further argued that the ALJ's finding that Phillips

17

retained RFC to perform light work was not supported by substantial evidence and that the ALJ failed to state adequate reasons finding Phillips not credible.  Finally, Phillips asserted that the ALJ's decision was not based on substantial evidence when considering the newly submitted evidence to the Appeals Council.

Phillips then filed a "Motion to Remand Pursuant to Sentence 4," arguing that, based on this Court's decision in *Washington v. Social Security Administration, Commissioner*, 806 F.3d 1317 (11th Cir. 2015), the Appeals Council was required to consider her submitted evidence dated after the ALJ's decision because it was chronologically relevant.  Phillips additionally filed two motions to remand, one pursuant to Social Security Ruling 16-3P and the other pursuant to "sentence six" of 42 U.S.C. § 405(g) for the Appeals Council to consider new evidence dated August 15, 2016, through September 13, 2016, which she claimed was "material."  Phillips argued that the evidence was chronologically relevant because it supported the submissions from Dr. White between November 2013 and July 2014 showing she had chronic lower back pain.  Specifically, this new evidence consisted of records from Gadsden Regional Medical Center showing that: (1) she had undergone an MRI that had revealed fusion at L5-S1 with pedicle screws and rod fixation; (2) she had developed persistent foraminal stenosis to the S1 nerve roots along with adjacent segment degeneration at L4 with a grade I spondylolisthesis and impingement of L5 nerve roots; (3) she had undergone surgery to remove the L5-S1 rods with

18

decompression of the S1 nerve roots with foraminotomies, L4 TLIF with reduction of listhesis, and the pedicle screws fixation at L4, L5, and S1 extension; and (4) her wound from surgery had not healed properly and eventually became infected, requiring a second surgery.

On March 31, 2017, the district court affirmed the denial of Phillips's application for DIB. The district court determined that substantial evidence supported the ALJ's finding that Phillips's subjective testimony was not credible, explaining that the ALJ had accurately summarized Phillips's testimony and that Phillips's statements discussing the intensity, persistence, and limiting effects of her pain were inconsistent with the submitted functional reports and medical records. The district court also determined that substantial evidence supported the ALJ's findings that Phillips retained the RFC to perform light work and that she could perform her past work. The court noted that the ALJ discussed in detail all the record evidence and considered all the relevant evidence in making the RFC determination. The court also determined that remand pursuant to Social Security Ruling 16-3p was not warranted.

Additionally, the district court found that the Appeals Council did not err in declining to consider the additional evidence Phillips submitted. The district court explained that the Appeals Council "must review evidence that is new, material, and chronologically relevant" and found that the submitted records postdating the ALJ's

decision constituted "new evidence." However, the district court determined that the evidence was not "chronologically relevant," i.e., not relating "to the period on or before . . . the ALJ's decision." While recognizing "[a] medical evaluation conducted after the ALJ's decision may be chronologically relevant if it pertains to conditions that pre-existed the ALJ's opinion," the district court explained that Phillips's new evidence did not "demonstrate that physicians relied on reports that [she] experienced pain during the relevant time period or that the physicians reviewed treatment records from before the ALJ's decision that speak to [her] physical or mental health conditions." The district court also pointed to records from Dr. Ryan that "Phillips's symptoms associated with her knee pain had 'worsened dramatically' by July 2014," indicating that her condition declined following the ALJ's decision. The district court therefore found that the Appeals Council was not required to consider the evidence because it was not chronologically relevant.

The district court further concluded that, even if the evidence was chronologically relevant, it was not "material." On this point, the district court determined that the reports from Dr. Khusro, Dr. Ryan, and Dr. White did not support Phillips's testimony about the severity of her symptoms. As to Dr. Khusro's report, the district court noted that Dr. Khusro did not make detailed examination findings nor recommend any work-related limitations to Phillips. As to Dr. Ryan's reports, the court noted that the reports did not suggest "Phillips's knee pain was

20

debilitating during her alleged disability period," but rather, that her lateral meniscus tear occurred after the ALJ's decision. The district court also noted that Dr. Ryan's reports did not mention other symptoms or complaints. Regarding Dr. White's reports, the district court explained that his reports did not provide evidence that would change the ALJ's decision. As such, the district court concluded that the "medical record as a whole demonstrates that . . . Phillips has suffered from back and knee pain, but the pain was not significant enough to warrant restrictions on [her] activities while she received treatment" and that the Appeals Council did not err in failing to review the new evidence.

Finally, the district court declined to remand under "sentence six" of § 405(g) based on medical records concerning Phillips's August 2016 back surgery. The district court reasoned that while the records were new and Phillips had shown good cause for not submitting them at the administrative level because they were not available before the conclusion of the administrative proceedings, the evidence was not material. The court explained that the records demonstrated that Phillips had back surgery that required additional treatment to heal but did not contain any new or additional restrictions associated with her back pain during the relevant time period. Accordingly, the district court affirmed the Appeals Council's decision and entered final judgment.

21

On April 26, 2017, Phillips filed a motion to alter or amend the judgment, stating that a fully favorable decision issued by the Social Security Administration ("SSA") on April 14, 2017, found her disabled since May 31, 2014. Phillips claimed that this subsequent favorable decision was new evidence that was previously unavailable and asserted that the decision, combined with the other new evidence she had presented to the Appeals Council, required remand. Then, on April 28, 2017, Phillips filed a second motion to remand pursuant to "sentence six." On November 8, 2019, the district court denied Phillips's motions, reasoning that a subsequent favorable decision was not new evidence for purposes of § 405(g). This appeal ensued.

## II.    STANDARDS OF REVIEW

Several standards of review govern this appeal. We review the Commissioner's decision to deny benefits "with deference to the factual findings and close scrutiny of the legal conclusions." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). "The Commissioner's factual findings are conclusive if supported by 'substantial evidence,'" *id.* (quoting 42 U.S.C. § 405(g)), i.e., "relevant evidence . . . a reasonable person would accept as adequate to support a conclusion," *id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). "We do not reweigh the evidence or substitute our judgment for that of the [Commissioner];

instead, we review the entire record to determine 'if the decision reached is reasonable and supported by substantial evidence.'" *Cornelius*, 936 F.2d at 1145 (quoting *Bloodsworth*, 703 F.2d at 1239); *accord Ingram*, 496 F.3d at 1260. The Commissioner's legal conclusions are reviewed *de novo*. *Ingram*, 496 F.3d at 1260.

Additionally, a claimant may present new evidence at each stage of the administrative process, and "[w]hen the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is . . . subject to judicial review." *Washington*, 806 F.3d at 1320 (quoting *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). The submitted evidence must be "new, material, and chronologically relevant," and whether such evidence meets that standard "is a question of law subject to our *de novo* review." *Id.* (quoting *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)). "[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Id.*

Furthermore, we review the denial of a motion to alter or amend a judgment for abuse of discretion. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). Finally, we review *de novo* a district court's decision not to remand a claimant's claim to the SSA pursuant to sentence six of § 405(g). *See Ingram*, 496 F.3d at 1260.

## III.    ANALYSIS

23

On appeal, Phillips argues that the Appeals Council failed to determine whether the new evidence she submitted to it was chronologically relevant, as the Appeals Council did not have the benefit of our decision in *Washington v. Social Security Administration*, and that the case should be remanded to the Appeals Council with appropriate instructions. Phillips further argues that the ALJ's decision was not supported by substantial evidence once considered with the new evidence submitted to the Appeals Council. Finally, Phillips argues that the district court erred in denying her Rule 59(e) motion to alter or amend judgment and not remanding the case pursuant to sentence six of 42 U.S.C. § 405(g) in light of new evidence and a subsequent favorable decision from the SSA finding Phillips disabled since May 31, 2014. We address these arguments in turn.

## A. Whether the Appeals Council erred in not considering Phillips's submitted evidence.

Phillips first contends that the Appeals Council did not determine whether her submitted evidence was chronologically relevant and that, as such, the case should be remanded to the Appeals Council to make that determination. This argument is without merit.

"An individual claiming Social Security disability benefits must prove that she is disabled." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). For a DIB claim, "a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she w[as] insured." *Id.* A claimant seeking DIB

24

may submit new evidence at each stage of the administrative process, and the Appeals Council must review evidence that is "new, material, and chronologically relevant." *Washington*, 806 F.3d at 1320 (quoting *Ingram*, 496 F.3d at 1261). "Evidence is material if a reasonable possibility exists that the evidence would change the administrative result." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018). "New evidence is chronologically relevant if it 'relates to the period on or before the date of the [ALJ's] hearing decision.'" *Id.* (quoting 20 C.F.R. §§ 404.970(b), 416.1470(b) (2016)).

Our decision in *Washington* illustrates this rule. In *Washington*, a claimant applied for benefits with the SSA, asserting that he was unable to work because he suffered from several mental health conditions as well as asthma. 806 F.3d at 1318. The SSA denied his application for benefits, and an ALJ subsequently determined that the claimant was not disabled within the meaning of the Social Security Act. *Id.* The claimant requested review by the Appeals Council and submitted additional evidence to support his claim, including opinions from a licensed psychologist regarding the claimant's mental conditions. *Id.* at 1319. The psychologist's opinions, however, postdated the ALJ's decision, and the Appeals Council refused to consider the opinion because it "concerned a later time period and [was] immaterial to whether [the claimant] was disabled on or before the date of the ALJ's

25

decision." *Id.* at 1320. The district court affirmed the Appeals Council's decision. *Id.*

On appeal, this Court determined, as a matter of first impression, that "whether evidence meets the new, material, and chronologically relevant standard 'is a question of law subject to our *de novo* review.'" *Id.* at 1321 (quoting *Threet*, 353 F.3d at 1191). This Court then analyzed whether the psychologist's opinions satisfied the new, material, and chronologically relevant standard. *Id.* at 1321–23. This Court found that the psychologist's opinions were "material because, if accepted, 'there [was] a reasonable possibility' that they 'would change the administrative result.'" *Id.* at 1321 (quoting *Hyde v. Brown*, 823 F.2d 456, 459 (11th Cir. 1987)). This Court also found that the opinions were chronologically relevant, even though the psychologist had examined the claimant several months after the ALJ's decision, because the psychologist based his opinions on the claimant's reports and mental health treatment records indicating he experienced hallucinations throughout his life, including during the relevant time period prior to the ALJ's decision. *Id.* at 1322. Additionally, this Court determined that the psychologist's opinions about the claimant's cognitive defects related back to the relevant period. *Id.* Therefore, the opinions were "new, material, and chronologically relevant evidence," and the Appeals Council was required to consider them. *Id.* at 1323.

Accordingly, this Court reversed and remanded to the district court with instructions to remand the case to the Commissioner for consideration of that evidence. *Id.*

Relying on *Washington*, Phillips contends that the Appeals Council failed to determine whether her new submitted evidence was chronologically relevant and that her case should be remanded to the Appeals Council. This argument, however, is refuted by the record. In its decision, the Appeals Council stated that it looked at the evidence postdating the ALJ's decision and that the evidence was "new information . . . about a later time" and, "[t]herefore, . . . [did] not affect the decision about whether [Phillips] was disabled beginning on or before May 30, 2014." Thus, the Appeals Council declined to consider the new evidence because it was not chronologically relevant. As we have previously stated, "[t]he Appeals Council was not required to give a more detailed explanation or to address each piece of new evidence individually." *Hargress*, 883 F.3d at 1309.

Moreover, we agree that the submitted evidence was not chronologically relevant. The records postdating the ALJ's decision consist of reports from Dr. White, Dr. Ryan, and Dr. Khusro. As to Dr. Khusro's August 12, 2014, progress notes, there is no indication that Dr. Khusro considered Phillips's past medical records or that the information in the record relates to the period at issue. Thus, Dr. Khusro's progress notes are not chronologically relevant. Similarly, there is no indication in any of Dr. Ryan's reports that he considered Phillips's past medical

27

records or that the information in those reports relates to the period at issue. While Dr. Ryan's June 30, 2014, report shows that Phillips reported her left knee pain's onset "was month(s) ago," Dr. Ryan reported that Phillips's symptoms had "worsened dramatically." The records from Phillips's subsequent visits with Dr. Ryan likewise demonstrate that Phillips's left knee pain progressively worsened. The reports from Dr. Ryan are therefore not chronologically relevant. *Cf. Washington*, 806 F.3d at 1322 (noting that, in finding records to be chronologically relevant, there was "no assertion or evidence . . . that Mr. Washington's cognitive skills declined in the period following the ALJ's decision").

Regarding the reports from Dr. White, Phillips reported that she was "having more pain in her back" and had "developed some neck pain." Although Dr. White had previously treated Phillips during the relevant time period, there is no indication in the reports postdating the ALJ's decision that he based his opinions on his previous examinations of Phillips. Rather, Dr. White ordered new cervical and lumbar MRIs and x-rays, which he later examined in making his opinions. However, even assuming these records were chronologically relevant, remand is not required, as the records are not material. For evidence to be material, there must be "a reasonable possibility . . . that the evidence would change the administrative result." *Hargress*, 883 F.3d at 1309. Here, Dr. White's reports postdating the ALJ's decision are not material, as there is no reasonable possibility that consideration of those

28

reports would change the result of the proceedings.  Indeed, Dr. White examined the MRIs and x-rays taken and found that the cervical spine x-ray and MRI and the lumbar spine x-ray were "[e]ssentially normal postoperative" and that the lumbar spine MRI showed a "[p]osterior bulge at L4" that was not "surgical" but otherwise was "normal postoperative."  And notably, Phillips does not argue that *any* of her new submitted evidence is in fact "material."  Accordingly, the Appeals Council did not err in declining to review the evidence postdating the ALJ's decision.

## B. Whether the ALJ's decision was supported by substantial evidence when the evidence submitted to the Appeals Council is considered.

Next, Phillips argues that "[t]he ALJ's decision was not based on substantial evidence when the evidence submitted to the Appeals Council was considered." However, beyond this statement of the issue, Phillips does not make any argument explaining why the ALJ's determinations were not supported by substantial evidence.  Instead, Phillips merely summarizes the evidence she submitted to the Appeals Council.  "We have long held that an appellant abandons a claim when [she] either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014); *accord Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("As an initial matter, an appellant's brief must include an argument containing 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'  Thus, an

29

appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal." (citation omitted) (quoting Fed. R. App. P. 28(a)(9)(A)). Because Phillips has only raised this argument in a perfunctory manner without supporting arguments or authority, she has abandoned it.

Even if Phillips did not abandon this argument, the Appeals Council, as explained above, was not required to consider the submitted evidence postdating the ALJ's decision. We therefore need not address Phillips's argument that the denial of DIB was erroneous when the evidence submitted to the Appeals Council is considered. *See Hargress*, 883 F.3d at 1310 ("Because the new evidence was not chronologically relevant, the Appeals Council was not required to consider it. Accordingly, we do not address Hargress's argument that the denial of benefits was erroneous when this new evidence is considered.").

## C. Whether the district court erred in denying Phillips's Rule 59 motion and not remanding pursuant to sentence six of 42 U.S.C. § 405(g).

Finally, Phillips argues that the district court erred in denying her Rule 59 motion to amend judgment and not remanding pursuant to sentence six of § 405(g). We disagree. "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *Arthur*, 500 F.3d at 1343 (alteration in original) (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)). "A Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or

30

present evidence that could have been raised prior to the entry of judgment." *Id.* (alteration in original) (quoting *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)).

Under sentence six of § 405(g), a district court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). To obtain remand under sentence six, a "claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result[;] and (3) there is good cause for the failure to submit the evidence at the administrative level." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 821 (11th Cir. 2015) (quoting *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)); *see also Ingram*, 496 F.3d at 1267.

Phillips contends that the district court erred in denying her Rule 59(e) motion because remand was appropriate based on the evidence she submitted to the Appeals Council, medical records she submitted to the district court postdating the ALJ's decision, and the subsequent favorable decision from the SSA finding Phillips disabled since May 31, 2014. As to the evidence submitted to the Appeals Council and the district court postdating the ALJ's decision, Phillips seeks to relitigate old

31

matters that she previously raised to the district court, which is improper for a Rule 59(e) motion. As discussed above, the Appeals Council was not required to consider that submitted evidence. Regarding the subsequent favorable decision Phillips received from the SSA, we have previously held that "a later favorable decision is not evidence for § 405(g) purposes." *Hunter*, 808 F. 3d at 822. Because Phillips's subsequent favorable decision does not constitute evidence for purposes of § 405(g), remand based on that decision is likewise not appropriate under sentence six. We therefore find that the district court did not err in denying Phillips's Rule 59(e) motion.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.

**AFFIRMED**.